# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALLIED PACIFIC FOOD (DALIAN)   )
COMPANY, LIMITED,   )
  )
    Plaintiff,   )
  )
    v.   )     Civil Action No. 07-1982 (HHK)
  )
UNITED STATES FOOD AND DRUG   )
ADMINISTRATION, *et. al.*,   )
  )
    Defendants.   )
  )

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

JAMES C. STANSEL
Acting General Counsel

GERALD F. MASOUDI
Associate General Counsel
Food and Drug Division

ERIC M. BLUMBERG
Deputy Chief Counsel, Litigation

KAREN E. SCHIFTER
Associate Chief Counsel, Litigation
U.S. Dept. of Health & Human Services
Office of the General Counsel
5600 Fishers Lane
Rockville, MD 20857
(301) 827-1152

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

C. FREDERICK BECKNER III
Deputy Assistant Attorney General

EUGENE M. THIROLF
Director
Office of Consumer Litigation

ANDREW E. CLARK
Senior Trial Counsel
Office of Consumer Litigation
U.S. Department of Justice
PO. Box 386
Washington, D.C. 20044
(202) 307-0067
andrew.clark@usdoj.gov

April 8, 2008

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    Allied's Claims Are Precluded Under the APA Because Allied Seeks to Challenge
      FDA Import Admissibility and Detention Decisions, Which Are Committed to
      Agency Discretion By Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   Allied's Claims Are Premature . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A.    Allied's Claim Regarding its Request for Removal from DWPE is Not Ripe . . . 8

      B.    Allied's Challenges to IA 16-131 Are Not Ripe, and Allied Failed to Exhaust
            Administrative Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            1.    Allied's Challenge to the Issuance of the Import Alert is Not Ripe . . . . 10

            2.    There Has Been No Final Agency Action With Respect to Allied's
                  Claims Concerning FDA Oversight of Laboratory Testing . . . . . . . . . . . 13

            3.    Allied Has Failed to Exhaust Administrative Remedies . . . . . . . . . . . . . 13

III.  Import Alert 16-131 Is Not a Substantive Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      A.    The Provisions of IA 16-131 Do Not Create Binding Norms . . . . . . . . . . . . . . 18

      B.    Brief Press Statements and Third-Party Reports Do Not Define
            a Substantive Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      C.    The Court Should Not Apply *Bellarno* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      D.    The Removal Provision in IA 16-131 Does Not Create a Binding Norm . . . . . 22

      E.    The Literal Language of IA 16-131 Embodies Discretion . . . . . . . . . . . . . . . . . 22

IV.   Allied's Amended Complaint Fails to State a Cognizable Due Process Claim . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

### CASES

Page(s)

*American Mining Congressional v. Marshall,*
    671 F.2d 1251 (10th Cir. 1982) .................................................................... 17

*Arizona Public Service Co. v. EPA,*
    211 F.3d 1280 (D.C. Cir. 2000) .................................................................... 11

*Association of Flight Attendants-CWA, AFL-CIO v. Chao,*
    493 F.3d 155 (D.C. Cir. 2007) ...................................................................... 15

*Association of Irritated Residents v. EPA,*
    494 F.3d 1027 (D.C. Cir. 2007) ...................................................................... 6

*Baltimore Gas and Electric Co. v. FERC,*
    252 F.3d 456 (D.C. Cir. 2001) ........................................................................ 3

*Bellarno International Ltd. v. FDA,*
    678 F. Supp. 410 (E.D.N.Y. 1988) ......................................................... 20, 21

*Bennett v. Spear,*
    520 U.S. 154 (1997) ................................................................................. 8, 10

*Benten v. Kessler,*
    505 U.S. 1084 (1992) ................................................................................... 20

*Benten v. Kessler,*
    799 F. Supp. 281 (E.D.N.Y. 1992) .............................................................. 20

*Better Government Association v. Department of State,*
    780 F.2d 86 (D.C. Cir. 1986) ....................................................................... 11

*Board of Regents v. Roth,*
    408 U.S. 564 (1972) ..................................................................................... 24

*Brock v. Cathedral Bluffs Shale Oil Co.,*
    796 F.2d 533 (D.C. Cir. 1986) .................................................................... 18

*Cement Kiln Recycling Coalition v. EPA,*
    493 F.3d 207 (D.C. Cir. 2007) ............................................................... 11, 16

*Cleveland Board of Education v. Loudermill,*
    470 U.S. 532 (1985) ............................................................... 24

*Community Nutrition Institute v. Young,*
    818 F.2d 943 (D.C. Cir. 1987) ...................................... 20, 22

*Devia v. NRC,*
    492 F.3d 421 (D.C. Cir. 2007) ............................................. 12

*General Electric Co. v. EPA,*
    290 F.3d 377 (D.C. Cir. 2002) ............................................. 16

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ........................................................ 2, 3, 4

*Hopkins v. Women's Division, Board of Global Ministries,*
    238 F. Supp. 2d 174 (D.D.C. 2002) .................................. 6, 13

*Hudson v. FAA,*
    192 F.3d 1031 (D.C. Cir. 1999) ...................................... 11, 14

*Klugel v. Small,*
    519 F. Supp. 2d 66 (D.D.C. 2007) .................................... 6, 13

*McKart v. United States,*
    395 U.S. 185 (1969) ............................................................... 14

*Media Access Project v. FCC,*
    883 F.2d 1063 (D.C. Cir. 1989) ........................................... 11

*Moms Against Mercury v. FDA,*
    483 F.3d 824 (D.C. Cir. 2007) ............................................... 1

*NEC Corp. v. United States,*
    151 F.3d 1361 (11th Cir. 1998) ................................. 23, 24, 25

*Pacific Gas & Electric v. FPC,*
    506 F.2d 33 (D.C. Cir. 1974) ............................................... 17

*Panhandle Producers v. Economic Regulatory Administration,*
    847 F.2d 1168 (5th Cir. 1988) ............................................. 17

*Professionals and Patients for Customized Care v. Shalala,*
    56 F.3d 592 (5th Cir. 1995) ........................................... 19, 20

*Public Citizen, Inc. v. Nuclear Regulatory Commission,*
    940 F.2d 679 (D.C. Cir. 1991) ................................................................. 11

*Public Citizen v. Office of United States Trade Representative,*
    970 F.2d 916 (D.C. Cir. 1992) ................................................................. 11

*Ryder Truck Lines, Inc. v. United States,*
    716 F.2d 1369 (11th Cir. 1983) ................................................................. 17

*Sugarman v. Forbragd,*
    267 F. Supp. 817 (N.D. Cal. 1967), *aff'd, 405 F.2d 1189 (9th Cir. 1968),*
    *cert. denied, 395 U.S. 960 (1969)* ................................................................. 20

*Thornton v. City of St. Helens,*
    425 F.3d 1158 (9th Cir. 2005) ................................................................. 24

*Vinyard v. Wilson,*
    311 F.3d 1340 (11th Cir. 2002) ................................................................. 24

*Zwygart v. Board of County Comm'rs,*
    483 F.3d 1086 (10th Cir. 2007) ................................................................. 24

## STATUTES

5 U.S.C. § 701(a)(2) ................................................................. 1, 2, 3, 4, 7

5 U.S.C. § 553 ................................................................. 1

21 U.S.C. § 381(a) ................................................................. 3, 5, 18, 24

## REGULATIONS

21 C.F.R. § 1.94 ................................................................. 5, 18, 22, 24

21 C.F.R. § 10.45 ................................................................. 15

21 C.F.R. § 10.45(b) ................................................................. 8, 14

21 C.F.R. § 10.85(k) ................................................................. 19

## RULES

Fed. R. Civ. P. 12(b)(1) ............................................................................................................ 2

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 2

At the outset of its brief, plaintiff Allied Pacific Food (Dalian) Company, Limited ("Allied") asserts that "Allied does not wish to challenge the discretion of the FDA to determine the admissibility of any particular food product."  Opp. at 1.  With that statement, Allied has conceded this lawsuit.  In our opening brief, we explained that Congress had committed import admissibility decisions to the agency's complete discretion.  *See* Memorandum in Support of Defendants' Motion to Dismiss Amended Complaint ("Def. Mem.") at 15-27.  As a result, the agency's decisions to detain products, to use certain procedures in determining admissibility, and ultimately to exclude products from United States commerce are discretionary decisions that are not subject to judicial review.  Because the complaint exclusively challenges FDA decision-making processes regarding the detention and admissibility of aquaculture from China, the Court lacks subject matter jurisdiction over the complaint.

Allied has not even attempted to refute this point, blithely asserting that the case "is simply not about what the Defendants push this Court to believe."  Opp. at 1.  Rather than address this jurisdictional issue, Allied immediately proceeds to argue one of its four merits claims – that FDA should have promulgated Import Alert ("IA") 16-131 pursuant to notice and comment rulemaking under the Administrative Procedure Act ("APA"), 5 U.S.C. § 553.  But ignoring a jurisdictional barrier does not make it magically disappear, as Allied seems to believe.  Before Allied can obtain judicial review of its merits claims, Allied must establish that the APA applies to this case and that the Court has jurisdiction to hear it – something Allied has completely failed to do.[1]  As we pointed out in our opening brief, the APA, by its terms, does not apply to agency action that is "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  *See* Def. Mem. at 15-17.

---

[1]  As plaintiff, Allied bears the burden of establishing that this Court has subject matter jurisdiction over its claims.  *See, e.g., Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).

1

Incredibly, however, Allied does not even *cite* this provision in its opposition brief, much less attempt to overcome the government's jurisdictional objection. Indeed, Allied appears to acknowledge that FDA has discretion to determine the admissibility of food products offered for import (Opp. at 1, 25-26). Yet, Allied offers no rationale for why its claims – which concern the admissibility of aquaculture food products originating in China and the manner in which FDA exercises its discretion in making admissibility determinations with respect to those products – are cognizable under the APA.

Because the FDA actions Allied seeks to challenge are wholly committed to agency discretion, Allied's complaint must be dismissed for lack of subject matter jurisdiction. Allied's lawsuit is also premature and subject to dismissal on the additional grounds of ripeness and finality, as well as failure to exhaust administrative remedies. Even if this Court had jurisdiction over Allied's claims, however, the import alert Allied seeks to challenge is not a substantive rule, but a procedure for the agency to communicate information to its field personnel, to suggest non-binding priorities for the allocation of field resources, and to provide notice to the affected industry regarding the agency's current views on regulatory priorities related to their products. For these reasons, as more fully set forth below and in our opening brief, Allied's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

I.      **Allied's Claims Are Precluded Under the APA Because Allied Seeks to Challenge FDA Import Admissibility and Detention Decisions, Which Are Committed to Agency Discretion By Law**

As we explained in our opening brief, the APA, 5 U.S.C. § 701(a)(2), precludes judicial review when "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely." *Heckler v.*

2

*Chaney*, 470 U.S. 821, 830 (1985).  The Supreme Court has directed that, when review is

precluded under section 701(a)(2), there is no review at all, even for an abuse of discretion.

*Chaney,* 470 U.S. at 830.  The non-reviewability of such decisions is not a question of deference

– it is jurisdictional.  *Baltimore Gas and Elec. Co. v. FERC*, 252 F.3d 456, 458 (D.C. Cir. 2001).

The FDCA's import refusal provision embodies just such a discretionary standard.

Congress directed the agency to refuse the admission of an article of imported food if it

"appears," *inter alia*, adulterated or misbranded, based on an examination of the samples "or

otherwise."  *See* 21 U.S.C. § 381(a).  In using the terms "appears" and "otherwise," which are

undefined, Congress delegated discretionary authority to the agency without creating a judicially

manageable standard.  This language, together with the history of the provision and of a parallel

provision providing for the forfeiture of goods, confirms Congress' intention to delegate to FDA

unreviewable discretionary authority with respect to import refusals.  *See* Def. Mem. at 15-24.

In these circumstances, where the statute affords no judicial review of FDA's ultimate

determination to *refuse* admission of an entry offered for import, there is no jurisdictional basis for

challenging FDA's *initiation* of the refusal process by identifying certain products for possible

detention without physical examination ("DWPE") pending a determination of their admissibility.

FDA's interim decisions regarding the allocation of its resources – including what entries to

examine or detain, what evidence to solicit, and what information to consider in determining

whether to admit or deny any entry offered for import – are, like the admissibility decision itself,

"committed to agency discretion by law," and thus judicially unreviewable.  5 U.S.C. § 701(a)(2).

Accordingly, both the issuance of IA 16-131 itself and the agency's detention of Allied's products

pursuant thereto exclusively involve the exercise of agency discretion and are beyond the scope of

judicial review.  Allied's entire complaint is therefore barred by section 701(a)(2) of the APA and

3

must be dismissed.

Allied inexplicably appears to believe that it can simply skip the jurisdictional issue to reach the merits of its argument that FDA should have engaged in notice and comment rule-making before issuing IA 16-131.  Allied does not discuss or even cite *Heckler v. Chaney*, and offers no statutory or other authority that circumscribes FDA's discretion in the import arena.  Nor does Allied cite any case involving a challenge to FDA's import decisions that rejected the government's argument here that jurisdiction is lacking under section 701(a)(2) of the APA.

Indeed, Allied fails to offer any coherent explanation beyond a bald assertion that "this case is simply not about" "the discretion of the [FDA] to determine the admissibility of foreign seafood into United States commerce."  Opp. at 1.  That assertion, however, is belied by Allied's own Amended Complaint.  Allied alleges:  in *Count One*, that IA 16-131 is a substantive rule that should have been promulgated through notice and comment rulemaking; in *Count Two*, that FDA fails to oversee third party laboratories and its own compliance officers, leading to inconsistent enforcement of IA 16-131; in *Count Three*, that FDA arbitrarily and capriciously refused to remove Allied from DWPE under IA 16-131; and in *Count Four*, that FDA impermissibly limits the evidence that may be presented as to the admissibility of an import in violation of due process.  Contrary to Allied's protestations, all of these matters relate to "the discretion of the [FDA] to determine the admissibility of foreign seafood into United States commerce."  Thus, Allied's claims in this case fall squarely within the ambit of *Heckler v. Chaney* and are not cognizable under the APA.

Allied suggests in its introduction that it is challenging only "FDA's creation of a substantive rule, guised as an Import Alert."  Opp. at 1.  It further contends that IA 16-131 "binds the discretion of the FDA and requires its agents to detain without physical examination every

4

United States-bound shipment of shrimp [from China]." *Id*. These arguments, however, do not permit Allied to ignore the threshold jurisdictional issue.

First, Allied misrepresents the nature of the Import Alert. By its literal language, the Import Alert conveys information and discusses agency policy, but nothing in it is binding. As we explained in our opening brief, the Import Alert allows FDA headquarters to communicate information and precedent to its staff in the field, as well as to disclose its regulatory priorities to regulated industry. Although Allied cites to various statements FDA representatives have made in summarizing policy, none of these statements have any legal effect on the nature of IA 16-131. *See infra*, at III.B. Allied has no support for its claim that the Import Alert constitutes binding authority that removes FDA discretion with respect to Chinese aquaculture. Indeed, Allied has effectively conceded this point by alleging in its complaint that FDA inconsistently enforces IA 16-131. *See, e.g.*, Am. Compl. at ¶ 86.

Second, even if Allied's characterizations of IA 16-131 were accurate, Allied still offers no coherent explanation as to why it is excused from demonstrating subject matter jurisdiction. Subsumed within FDA's authority to exclude imported foods from United States commerce is the ability to detain such goods while admissibility is being determined. *See* 21 U.S.C. § 381(a); 21 C.F.R. § 1.94.[2] Thus, as Allied appears to acknowledge, any FDA district office can detain on an individual basis any entry that Allied might offer for import, or, indeed, all aquacultured seafood entries originating in China – irrespective of the existence of IA 16-131 or any other import alert. *See* Opp. at 1, 25-26.

Given FDA's unquestioned authority to detain and determine the admissibility of imported

---

[2] FDA "detains" a product when it makes an initial determination that an article may not meet the standards for admission into domestic commerce and notifies the owner or consignee of an opportunity to show that the article meets the admissibility criteria.

products on an individual basis, nothing prevents the agency from exercising its enforcement authority with greater efficiency and transparency through the use of DWPE on a group-wide basis. *See Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1031-32 (D.C. Cir. 2007) (where agency had discretion to take individual enforcement actions, it was permitted to opt for "broader strategy" to achieve "industry-wide compliance."). Just as FDA can detain an individual product pending a determination of its admissibility, so can the agency detain groups of products based upon, for instance, product type, manufacturer, importer, or country of origin. It is within FDA's sole discretion to determine which products or groups of products are subject to refusal of admission under the statute, and to decide which to detain while determining admissibility so as to best to allocate its resources. *See id*. The issuance of import alerts like IA 16-131, which provide information to the field with respect to such determinations and priorities, is part and parcel of this process.

It is thus no answer to the government's jurisdictional argument for Allied merely to disclaim any intention to challenge the discretion of the FDA to determine the admissibility of any particular food product. Opp. at 1. Allied's protestations notwithstanding, challenging FDA's discretion to determine the admissibility of particular food products is precisely and exclusively what Allied's Amended Complaint purports to do. Such a challenge, however, is not permitted under the APA or under well-established legal precedent – none of which Allied attempts to rebut. Because Allied has failed to surmount, or even contest, the government's jurisdictional argument, its complaint should be dismissed. *See Klugel v. Small*, 519 F. Supp. 2d 66, 72 (D.D.C. 2007) (Kennedy, J.) ("It is well established in the D.C. Circuit that when a party does not address arguments raised by a movant, the court may treat those arguments as conceded."); *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well

6

understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

## II.    Allied's Claims Are Premature

Even if this case were not barred by section 701(a)(2), it would not be justiciable at this time based on ripeness, finality, and exhaustion of administrative remedies.  Analysis of these issues depends in part on which of Allied's claims is under consideration.  To the extent each doctrine applies to a particular claim, such doctrine provides an independent basis for dismissal.

Only one of the four counts challenges an FDA administrative proceeding.  Count Three relates to Allied's pending application for removal from DWPE under IA 16-131.  FDA continues to consider that application, as demonstrated by its letters to Allied's counsel dated December 7, 2007 and April 4, 2008 (Am. Compl. Ex. 4 and Ex. 1 hereto, respectively).[3]  Those letters provide information about the status of Allied's application and request additional information that FDA requires to complete its evaluation.  Because FDA has not yet issued a final decision on Allied's application, the claim in Count Three is premature.

None of the remaining counts in the Amended Complaint relate to any specific product line or administrative proceeding.  Although some of Allied's products had been detained at the time its original complaint was filed, all of the products referenced in the original complaint were ultimately admitted, and there have been no subsequent refusals of Allied's products.  Thus, this lawsuit does not involve a challenge to the final refusal of any of Allied's products.  Instead, Allied seeks to challenge purported FDA processes and practices in determining whether Chinese aquaculture

---

[3] Certain information that Allied might claim is confidential in the April 4 letter has been redacted.

should be admitted into domestic commerce.  These claims are likewise premature.  Such

processes and practices do not, in the abstract, constitute final agency action "by which 'rights or

obligations have been determined,' or from which 'legal consequences will flow.'"  *Bennett v.*

*Spear*, 520 U.S. 154, 178 (1997) (citation omitted).  Nor are these claims "fit" for judicial review

without some factual context, such as actual product refusals.  Allied has also failed to exhaust

administrative remedies because it did not file a citizen petition raising these issues, as required by

FDA regulation.  21 C.F.R. § 10.45(b).  Accordingly, judicial review of Allied's claims is not

suitable at this time.

### A.    Allied's Claim Regarding its Request for Removal from DWPE is Not Ripe

Count Three challenges FDA's actions in an ongoing administrative proceeding.  On

September 10, 2007, Allied applied to FDA to be removed from DWPE under IA 16-131.  Am.

Compl. ¶ 36.  On December 7, 2007, FDA sent a letter to Allied's counsel, setting forth FDA's

evaluation of the HACCP compliance information submitted as of that date.  Am. Compl. Ex. 4.

FDA explained that the HACCP plans lacked sufficient information regarding the mechanisms for

ensuring that the aquaculture did not contain drug/food additive residues, and the auditor's report

lacked detailed information regarding the adequacy of controls in place for unapproved veterinary

drugs used in aquacultured shrimp.  *Id*. at 1-2.  The letter further indicated that FDA needed to

conduct its own on-site audit of the auditors' work at Allied's facility in China before FDA could

be confident that Allied had appropriate controls in place.  *Id*. at 3.

After some informal communications by telephone and email between counsel for each

party, FDA issued another letter on April 4, 2008.  That letter reminded Allied that FDA was still

awaiting the information from Allied regarding Allied's HACCP program that FDA had requested

in its December 2007 letter.  FDA also requested that Allied clarify its selection of an auditor for

FDA to evaluate. The agency explained that, because Allied had previously provided information from three auditors, and had indicated through counsel that it might want to proceed with a fourth auditor, Allied needed to identify which auditor it was choosing in order to enable FDA to proceed with its plans for an on-site evaluation.

FDA is currently in the process of planning a trip to China to conduct audits at seafood facilities. Although FDA had hoped to conduct these audits earlier this year, the timing of such a trip depends upon several factors, including (1) the cooperation of and facilitation by various parts of the Chinese government and various parts of the U.S. government; (2) complete submissions by the manufacturers and auditors who will be the subject of the audit inspections; and (3) logistical issues regarding scheduling. Because these pieces have not yet come together, FDA has not yet made the trip, but hopes to do so in the coming months.[4]

Against this backdrop, there is no merit to Allied's assertion that FDA's December 7 letter is final agency action. Opp. at 23-24. Contrary to Allied's claim, FDA's letter did not in any sense "reject" Allied's application for removal from DWPE, but rather made clear that the agency's consideration of the application was continuing. Nor does the fact that FDA has not yet scheduled the precise dates for its trip to China make such a trip "hypothetical," as Allied contends. Opp. at 24. Indeed, counsel's continuing email and telephonic requests for updates on the scheduling of the China trip belie its assertion that this proceeding is concluded. Allied's claim that it is "powerless to satisfy" the conditions in FDA's letters, Opp. at 22, is also baseless, because Allied certainly can supply the information concerning its facility and audits that was requested in FDA's letters. And, to the extent Allied is required to wait for FDA to conclude its deliberations and

---

[4] Whether or not Allied will be included in this trip depends on whether Allied supplies the necessary information.

reach a final decision on Allied's application, Allied is in the same position as any other party that submits an application or other request to an administrative agency. The minimal delay occasioned by an agency's consideration of a pending application does not convert an ongoing proceeding into final agency action subject to challenge under the APA.

Allied's unremarkable contention that an agency letter can, in some circumstances, constitute final agency action, is also of no moment. Opp. at 23. Indeed, the government never contended otherwise. It is because of their *content*, not their *form*, that the December 7, 2007 and April 4, 2008 letters do not constitute final agency action. Because the December 7 and April 4 letters do not "mark the consummation of the agency's decisionmaking process," *Bennett v. Spear*, 520 U.S. at 178, they do not constitute final agency action. Accordingly, Count Three of the Amended Complaint should be dismissed for lack of ripeness and final agency action.

**B.     Allied's Challenges to IA 16-131 Are Not Ripe, and Allied Failed to Exhaust Administrative Remedies**

Allied's claims challenging the issuance of IA 16-131 and the processes and procedures that FDA employs under the Import Alert are equally unripe, and subject to dismissal for failure to exhaust administrative remedies as well.

**1.     Allied's Challenge to the Issuance of the Import Alert is Not Ripe**

FDA's issuance of IA 16-131 does not constitute final agency action for much the same reason that the Alert is not a substantive rule. *See infra*, at III. A statement that conveys information and priorities, such as IA 16-131, does not by itself have the legal effect required for final agency action: "one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. at 178 (citation omitted). As Allied's own case authority makes clear, such statements only become actionable when they "govern

[agency] decisions." *Better Government Ass'n v. Dep't of State*, 780 F.2d 86, 93 (D.C. Cir.

1986). *See Arizona Pub. Serv. Co. v. EPA*, 211 F.3d 1280, 1296-97 (D.C. Cir. 2000)

(distinguishing *Better Gov't Ass'n* on ground that agency action being challenged did not "govern"

agency decision-making because agency planned to make decisions on "case-by-case" basis).[5]

Here, Allied itself has demonstrated that FDA does not treat the Import Alert as binding.  *See*

*infra,* at III (citing, *e.g.*, Am. Compl. ¶ 86; Opp. at 15).  Because FDA exercises its discretion to

make determinations on a case-by-case basis, the Import Alert does not "govern" agency decisions

and its issuance was not, by itself, final agency action.

　　　　Moreover, the D.C. Circuit has repeatedly found that early facial challenges to agency

pronouncements are not fit for review:

> Where an agency has discretion in the application of the challenged regulations, as
> in this case, a purely facial challenge may not be ripe for review if the agency could
> grant the requested relief and thereby obviate the need for judicial review. . . .
> [P]ostponing review would provide for a more efficient examination and disposition
> of the issues. We cannot therefore conclude that the facial challenge raised by
> petitioners is, at this time, "fit" for judicial review.

*Media Access Project*, 883 F.2d at 1070 (citations and quotation marks omitted); *see also Cement*

*Kiln Recycling Coalition v. EPA*, 493 F.3d 207, 216 & n.5 (D.C. Cir. 2007); *Hudson v. FAA*, 192

F.3d 1031, 1034-35 (D.C. Cir. 1999) ("[W]e have often held that an early procedural challenge to

a purported policy statement is not ripe because it is not yet demonstrable that the agency intends

to treat it as having the characteristics of a rule."); *Pub. Citizen, Inc. v. Nuclear Regulatory*

*Comm'n*, 940 F.2d 679, 683 (D.C. Cir. 1991).

---

[5] *See also Pub. Citizen v. Office of United States Trade Representative*, 970 F.2d 916, 921 (D.C. Cir. 1992) (distinguishing *Better Government Ass'n* on ground that agency statements were not "clearly final"); *Media Access Project v. FCC*, 883 F.2d 1063,1070-71 (D.C. Cir. 1989) (distinguishing *Better Government Ass'n* on ground that the court there found that "resolution of the legal issue would not be measurably enhanced by factual illustration;" in the case before the court, facial challenge required factual context to see how the measure would be applied) (citation and quotation marks omitted).

Allied has also failed to establish hardship – the second prong of the ripeness inquiry. Allied complains that it has been "forced" out of the United States market due to the cost and time delay of testing for contaminants in its products. Opp. at 24. Allied's independent choices regarding which markets are most economically desirable, however, do not establish grounds for immediate review. Allied's concern that an FDA refusal of one of Allied's product lines would lead to a suspension of export privileges by the Chinese government is likewise unavailing. Opp. at 25. Indeed, that eventuality is theoretically possible regardless of IA 16-131, as Allied's products – like those of any importer – are always subject to refusal under the statute if they appear adulterated or misbranded. Nor is it possible for Allied to be subject to both claimed hardships at this time – if it has abandoned the United States market as it claims, it cannot be concerned about the possibility of an import refusal from FDA. In any event, hypothetical consequences stemming from action by unrelated third parties do not establish sufficient hardship to justify immediate review. *See Devia v. NRC,* 492 F.3d 421, 427 (D.C. Cir. 2007) (to outweigh institutional interest in deferring review, hardship must be "immediate and significant").

Thus, because analysis of Allied's facial challenge to IA 16-131 would benefit from further factual development, because the considerations of judicial economy and efficiency that underlie the ripeness and finality doctrines would best be served by delaying Allied's "facial" challenge to IA 16-131 until after the conclusion of its pending administrative proceeding, and because Allied's allegations of hardship do not outweigh these institutional interests, Allied's challenge is premature and should be dismissed. *See generally Devia*, 492 F.3d at 424-26 (discussing institutional interests in deferring review).

### 2. There Has Been No Final Agency Action With Respect to Allied's Claims Concerning FDA Oversight of Laboratory Testing

With respect to Allied's claims in Count Two (that FDA fails to oversee third party laboratories and its own compliance officers, leading to inconsistent enforcement of IA 16-131) and Count Four (that FDA impermissibly limits the evidence that may be presented as to the admissibility of an import in violation of due process), Allied does not offer any argument that its complaint challenges "final agency action." *See* Opp. at 21-24. These counts may be dismissed on that basis alone. *See Klugel*, 519 F. Supp. 2d at 72 (when party does not address arguments raised by movant, court may treat those arguments as conceded); *Hopkins*, 238 F. Supp. 2d at 177.

Indeed, there are *no* final agency actions associated with these allegations. Allied does not cite any written document setting forth the procedures it contends FDA improperly uses, and its allegations are not fit for judicial review in the abstract without some factual context tethering Allied's claims to an actual import refusal. Although Allied alleges both in its Amended Complaint and opposition brief that FDA made mistakes in reviewing some of the testing data related to Allied's products, those findings were appealed within FDA and FDA ultimately admitted the products into domestic commerce – a result Allied attributes to "the herculean efforts of Allied's United States attorneys." *See* Opp. at 25 & n.7. In fact, these developments illustrate one of the primary purposes underlying the ripeness, finality and exhaustion doctrines – to allow administrative processes to play out and potentially moot the need for judicial review.

Because there has been no final agency action, and Allied has raised no issue that is fit for review with respect to Counts Two and Four, those claims should be dismissed.

### 3. Allied Has Failed to Exhaust Administrative Remedies

As explained in our opening brief, FDA regulations require that a party who wishes to

13

"request that the Commissioner take or refrain from taking any form of administrative action," must first file a citizen petition with FDA and must receive a "final administrative decision" on that petition "before any legal action is filed in a court." 21 C.F.R. § 10.45(b). *See* Def. Mem. at 34. Allied has made no effort to comply with that provision.

Allied argues that the Court should decline to apply exhaustion, for two reasons. First, Allied claims that its challenge is "purely legal." Opp. at 29-31. In making this argument, however, Allied discusses only Count One. *See* Opp. at 31. Although FDA's citizen petition requirement does not apply to adjudicatory proceedings such as Allied's application for removal from DWPE (Count Three), it fully applies to Allied's claims in Counts Two and Four that FDA procedures are inadequate or unfair. Moreover, these claims are clearly fact-based. Thus, the "purely legal" argument cannot excuse Allied's failure to exhaust administrative remedies with respect to Counts Two and Four.

With respect to Count One, Allied's contention that the issues are "purely legal" is unavailing. As explained above, the D.C. Circuit has held that facial challenges to agency pronouncements benefit from a sufficient factual context to demonstrate the agency's application of the pronouncement. *See, e.g., Hudson*, 192 F.3d at 1034-35. Because there have been no refusals of Allied's products since the issuance of IA 16-131, and Allied's application for removal from DWPE under IA 16-131 has not yet been decided, the present record of FDA's practical application of the Import Alert in this case is scant indeed. Exhaustion would allow the agency to fully consider Allied's argument and develop a proper record with respect to the issues presented. *See McKart v. United States*, 395 U.S. 185, 193 (1969) (discussing purposes of exhaustion).

Second, Allied claims that exhaustion would be futile because its counsel engaged in discussions with the agency last Fall. However, its representation that "Allied has previously

14

vetted each of the issues raised in its complaint at the highest levels of the FDA," Opp. at 33, is grossly overstated. Although Allied's counsel engaged in discussions with mid-level agency officials in the Fall of 2007, those discussions were limited to issues surrounding then pending administrative proceedings involving Allied's detained products and its application for removal from DWPE. Specifically, Allied's counsel (on behalf of importers of Allied's products) sought further review of certain testing data relating to then pending detentions of products produced by Allied. As a result of those proceedings and the submission of additional data by the owners/consignees, FDA ultimately determined that the products in question could be admitted into domestic commerce. In addition, Allied's counsel sought further progress on Allied's application for removal from DWPE under IA 16-131. Those discussions led to FDA's December 7, 2007 letter to Allied's counsel. The claims made in Counts One, Two, and Four of the Amended Complaint, however, were not considered by FDA in those administrative proceedings and were certainly not "vetted" at the "highest levels" of FDA.

In any event, Allied's informal discussions (which often occurred through FDA counsel, and not with agency decision-makers) are not the appropriate forum or vehicle for the agency to consider the types of issues raised in Counts One, Two, and Four. There is no exception to the FDA's citizen petition requirement for informal discussions with agency personnel. *See* 21 C.F.R. § 10.45. Where, as here, a plaintiff "steer[s] clear of established agency procedures altogether, . . . exhaustion is especially important." *Ass'n of Flight Attendants-CWA, AFL-CIO v. Chao*, 493 F.3d 155, 158-59 (D.C. Cir. 2007). Thus, because Allied has failed to file a citizen petition regarding the claims in Count One, Two, and Four of its Amended Complaint, and has failed to establish that such effort would be futile, these counts should be dismissed for failure to exhaust administrative remedies.

15

**III.    Import Alert 16-131 Is Not a Substantive Rule**

Because Allied has failed to establish that the Court has subject matter jurisdiction over its challenge, the Court need not reach any of the merits issues. However, even if Allied's claim that FDA was required to engage in notice and comment rulemaking before issuing IA 16-131 were properly before the Court, Allied would not be entitled to relief. The parties appear to agree that the legal standard for determining whether an agency statement is a substantive rule turns on whether the statement (a) binds the agency and private parties with the force of law and (b) prevents the agency from exercising discretion in making the ultimate decision. *See* Def. Mem. at 37; Opp. at 3; *Cement Kiln*, 493 F.3d at 215-16 (quoting *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 382 (D.C. Cir. 2002)). Here, neither criterion of that standard is met – nothing in the Import Alert operates with the force of law, and FDA retains complete discretion with respect to both product detentions and import admissibility decisions.

As discussed earlier, the Import Alert at issue is a mechanism for FDA headquarters to communicate with FDA field personnel and the regulated industry. In this case, FDA headquarters gathered and analyzed data that showed a significant problem of drug/food additive residues in Chinese aquaculture and it shared such information with the field through IA 16-131. The Import Alert also set forth information regarding particular products that may be DWPE, the data that might be sufficient to convince FDA that a particular line should be admitted, and the data that should be submitted by importers with a request for removal from DWPE.

At most, therefore, IA 16-131 sets forth standard procedures and creates a rebuttable presumption that aquaculture from China may be detained or refused pending further information regarding the admissibility of the product. Nothing in the Import Alert, however, is binding with

the force of law.  The creation of a rebuttable presumption is not in itself a substantive rule.[6]

Moreover, agency officials retain the discretion to make individualized detention and admissibility

decisions based on the information available regarding each product line.[7]

Indeed, Allied concedes (in the form of allegations and argument intended to establish

other points) that FDA exercises discretion in its import decisions and does *not* treat IA 16-131 as

mandatory or binding.  Allied alleges, for instance, that FDA "fails to oversee or control FDA

compliance officers . . . responsible for enforcing the Import Alert" which has resulted in

inconsistent results.  *See* Am. Compl. ¶ 86.  In other words, FDA permits its field staff to exercise

discretion in making detention and other decisions relating to admissibility.

Allied further asserts that, in the pending administrative proceeding regarding Allied's

application for removal from DWPE, FDA has taken actions that do not "find any support in the

Import Alert."  Opp. at 15.  More specifically, Allied complains that FDA has indicated an

unwillingness to rely on auditors without first determining whether the auditors are reliable.  *See*

Opp. at 14-16; Letter from Dominic J. Veneziano, Director, Division of Import Operations &

Policy to Mitchell Fuerst (Dec. 7, 2007) (Am. Compl. Ex. 4).  As this example demonstrates, FDA

continues to consider how to best leverage its resources to protect the domestic population from

unsafe imported products without considering itself rigidly bound by the precise language of IA

16-131.  Allied's assertions thus demonstrate that IA 16-131 is simply what FDA says it is – a

---

[6] *See Panhandle Producers v. Econ. Regulatory Admin.*, 847 F.2d 1168, 1175 (5th Cir. 1988) (agency guideline that established presumption and burden of proof not a binding rule); *Ryder Truck Lines, Inc. v. United States*, 716 F.2d 1369, 1377-78 (11th Cir. 1983) ("the use of presumptions does not reasonably transform a statement of policy into a binding norm").

[7] *See Pacific Gas & Elec. v. FPC*, 506 F.2d 33, 38 (D.C. Cir. 1974) (policy statement that is not "finally determinative" of rights or issues is not a binding); *Am. Mining Cong. v. Marshall*, 671 F.2d 1251, 1263 (10th Cir. 1982) (because affected parties will still have opportunity to challenge ultimate determination, the agency "strategy for implementation" pronouncement "does not finally affect [their] rights and obligations" and therefore is not a substantive rule).

communication regarding information and priorities – and not a binding, mandatory rule, as FDA

remains "free to exercise [its] informed discretion." *See* Opp. at 18 (quoting *Brock v. Cathedral*

*Bluffs Shale Oil Co.*, 796 F.2d 533, 538 (D.C. Cir. 1986)).

A.    **The Provisions of IA 16-131 Do Not Create Binding Norms**

Allied attempts to characterize IA 16-131 in a manner that would make it appear more

binding than it is.  However, Allied's description is not supported by either the language of the

Alert itself or FDA practices.  For example, IA 16-131 contains a provision that permits firms to

apply to be removed from DWPE.  In such event, the rebuttable presumption that aquaculture

from China may be detained or refused based on information in the Import Alert would not be

applied to products from that firm.  However, FDA retains its normal regulatory authority to

detain shipments from any firm – whether "exempted" or not –  whenever "it appears that the

article may be subject to refusal of admission," 21 C.F.R. § 1.94.  Because even the products of an

"exempted" firm could be detained based on information other than that in IA 16-131, Allied's

assertion that FDA "may not" detain without physical examination the aquacultured products

manufactured by an "exempted" firm is flatly wrong.  *See* Opp. at 5.  Allied's claim that FDA must

detain goods from firms that are not "exempt" is likewise incorrect.  *See* Opp. at 18-19.

Allied further contends that IA 16-131 is binding because "the burden of the FDA

regulatory process has been shifted to the . . . importers." Opp. at 6.  However, this merely

reflects how FDA's authority operates.  If a product appears to be subject to refusal, the

owner/consignee has the right to introduce testimony regarding the product's admissibility.  *See* 21

U.S.C. § 381(a); 21 C.F.R. § 1.94.  Regardless, as noted above, shifting the burden of proof to a

regulated entity does not, by itself, create a substantive rule.

Allied also maintains that the Import Alert is binding because it contains detailed

18

procedures for laboratories and importers seeking to show that a particular product is safe and explains how foreign manufacturer can provide information showing that their practices are safe and sanitary. Opp. at 6-8. All of these measures, however, promote the efficiency of FDA's screening process by providing useful information to FDA staff and industry. There is nothing in these suggested procedures that binds the discretion of the agency in determining what procedures to use or information to consider as it carries out these activities, and, as Allied admits, FDA does not treat them as binding. *See* Am. Compl. ¶ 86.

### B. Brief Press Statements and Third-Party Reports Do Not Define a Substantive Rule

Allied next asserts that statements made in an FDA press release and in response to questions at a press conference reveal the binding nature of IA 16-131. Opp. at 8-9. Press statements, however, cannot serve to transform a non-binding field communique into a binding substantive rule. Such statements tend to oversimplify and are not typically crafted in a way that precisely delineates agency policy and procedure. *See* 21 C.F.R. § 10.85(k) (informal communications by FDA employees are not binding); *Prof'ls and Patients for Customized Care v. Shalala*, 56 F.3d 592, 599 (5th Cir. 1995) ("*P2C2*") ("informal communications often exhibit a lack of 'precision of draftmanship' . . . which is why such documents are generally entitled to limited weight" in determining whether an agency pronouncement is a substantive rule). Indeed, IA 16-131 is nine pages long; one- or two-sentence responses to media queries will not capture nuances such as rebuttable presumptions. Allied also cites a report by the Congressional Research Service ("CRS"), a research group in the Library of Congress that provides reports to Congress. The CRS report is not an FDA publication (or even an executive branch publication), and statements made therein cannot be attributed to the agency.

19

### C.    The Court Should Not Apply *Bellarno*

Allied urges the Court to follow *Bellarno Int'l Ltd. v. FDA*, 678 F. Supp. 410 (E.D.N.Y.

1988), in which the court held that a different FDA import alert, with different operative language,

was a binding legislative rule subject to notice and comment rulemaking.  Opp. at 10-12.  The

*Bellarno* court, however, apparently never considered the jurisdictional argument made here.  The

opinion contains no explanation as to how the Court could even reach the merits, particularly in

light of precedent, such as *Sugarman v. Forbragd*, 267 F. Supp. 817, 824 (N.D. Cal. 1967), *aff'd*,

405 F.2d 1189 (9th Cir. 1968), *cert. denied*, 395 U.S. 960 (1969), explicitly holding that FDA

import decisions are committed to agency discretion.

Moreover, no court has ever relied on *Bellarno* to hold that an FDA import alert was a

substantive rule, with the exception of one case from the same jurisdiction that was subsequently

overturned.  Four years after *Bellarno*, the same court applied that decision to hold that another

FDA import alert violated the APA's rulemaking requirement for substantive rules.  *See Benten v.*

*Kessler*, 799 F. Supp. 281, 288-90 (E.D.N.Y. 1992).  The ruling was promptly stayed by the

Second Circuit, however, and the Supreme Court summarily rejected the plaintiff's application to

vacate the stay.[8]  *Bellarno*, therefore, is hardly compelling precedent.

Furthermore, FDA has substantially revised its import alert procedures over the past twenty

years, and, as noted in our opening brief, *Bellarno* is therefore readily distinguishable.[9]  The

---

[8]  *See Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam) ("Petitioners contend that Benten is entitled to the return of her [imported product] because an administrative document instructing enforcement officials to seize that drug was promulgated without notice-and-comment procedures assertedly required under both the Administrative Procedure Act and FDA regulations.  We conclude that petitioners have failed to demonstrate a substantial likelihood of success on the merits of these claims.").

[9]  *See, e.g.*, *P2C2*, 56 F.3d at 598-99 (distinguishing *Bellarno* – as well as *Cmty. Nutrition Inst. v. Young*, 818 F.2d 943, 949 (D.C. Cir. 1987), also cited by plaintiff and discussed in the following section – on the ground that those cases involved agency rules that "removed all discretion from the agency" and "reduced [FDA's] role to [a] . . . mechanical[] determin[ation]").

language of the import alert in *Bellarno* used the words "automatically" and "shall," 678 F. Supp. at 415, leading the court to find that it was a mandatory directive, not discretionary guidance, and therefore was binding on both the agency and importers. *Id.* at 414. Here, by contrast, IA 16-131 employs discretionary, non-mandatory language, providing that "[d]istricts *may* detain . . ." and importers "*should* provide . . . ." The *Bellarno* court also cited a contemporaneous memorandum issued by the agency which provided that "[t]here should be no exceptions to strict enforcement." *Id.* at 415. Here, Allied can cite only to brief media remarks that do not delve into specific details, such whether there would be exceptions, and are not directed to FDA field staff in any event. Such press statements are in no way akin to the memorandum at issue in *Bellarno*.

Contrary to Allied's assertions, Opp. at 10, the *Bellarno* court did not hold that burden-shifting creates a substantive rule. Instead, the court focused on the substance and mandatory nature of the requirements placed upon importers under the alert at issue. 678 F. Supp. at 414 & n.4. The import alert at issue in *Bellarno* contained requirements for overcoming detention that went beyond satisfaction of the statutory standard, such as establishing a "complete chain of custody" and a "satisfactory reason for return of the goods." *Id.* at 411-12. When the plaintiff was unable to produce the complete chain of custody, FDA was unwilling to consider alternative evidence, such as testing to confirm the products' safety and purity. *Id.* at 412. The *Bellarno* court thus found that the agency had created a new obligation (*i.e.*, acquiring and maintaining a paper chain of custody) with which importers had to comply to satisfy the statutory requirements. 678 F. Supp. at 414 & n.4. IA 16-131, by contrast, recommends, but does not require, that an importer may seek to overcome the appearance of a violation by submitting information that confirms the absence of certain frequently found contaminants, thereby demonstrating that the lot is not adulterated. *See* Def. Mem. Ex. 1 at 4. Thus, IA 16-131 imposes no obligation beyond that

21

which the statute already imposes on the importer – to refrain from importing adulterated foods.

### D.    The Removal Provision in IA 16-131 Does Not Create a Binding Norm

Allied's next assertion – that the existence of an "exemption" process (to use Allied's term) under IA 16-131 means that the application of DWPE is mandatory and binding – does not withstand even minimal scrutiny.  Opp. at 12-13.  Because IA 16-131 essentially creates a rebuttable presumption, a procedure for "exemption" from the presumption does not make the presumption any more mandatory.  For Chinese aquaculture that originate with a firm that is *not exempted* from DWPE under IA 16-131, an FDA official may detain the products based on the information contained in IA 16-131.  For Chinese aquaculture that originate with a firm that *is exempted* from DWPE under IA 16-131, the FDA official may still detain the products, but he or she should not rely specifically on IA 16-131 to do so.  Either way, however, the official has the discretion to detain or not detain the products pursuant to 21 C.F.R. § 1.94.

Thus, the instant case is also readily distinguishable from *Cmty. Nutrition Inst. v. Young*, 818 F.2d 943, 949 (D.C. Cir. 1987) ("*CNI*"), upon which Allied relies.  Opp. at 12-13.  In *CNI*, the court found that the agency used "mandatory, definitive language" to create a standard and then permitted exceptions so that the conduct would not be "unlawful."  818 F.2d at 947.  The specific language used for the exception in *CNI* indicated that the standard was intended to be a binding norm that would establish the legality of the conduct at issue.  *Id*.  Here, by contrast, IA 16-131 does not create standards that determine legality.  Rather, it concerns the types of information the agency believes are relevant and the procedures it will employ in evaluating the admissibility of Chinese aquaculture into domestic commerce.

### E.    The Literal Language of IA 16-131 Embodies Discretion

Finally, Allied acknowledges that courts have given weight to an agency's choice of

discretionary language, such as "may" instead of "shall," in determining whether an agency pronouncement is a substantive rule, and that the FDA used "may" in IA 16-131. Opp. at 17. Nevertheless, Allied asserts that FDA's use of "may" is a "ruse." *Id.* On this point, Allied essentially reiterates its previous arguments – all of them meritless – that FDA press statements, the CRS report, and the standards and procedures set forth in the Import Alert for obtaining an exemption or releasing a product from detention all indicate that FDA exercises no discretion in implementing IA 16-131. Opp. at 18-19. As noted, Allied undermines its position by asserting elsewhere (in both its brief and Amended Complaint) that neither FDA field staff nor headquarters officials strictly or consistently adhere to the terms of IA 16-131, and thus do not treat it as binding. *See supra* at III.A. Here, "may" does mean "may," as evidenced by Allied's own accusations that FDA officials deviate from what Allied contends are the Alert's requirements.

Accordingly, if the Court were to reach the merits of Count One, it should be dismissed for failure to state a claim.

## IV.    Allied's Amended Complaint Fails to State a Cognizable Due Process Claim

Count Four of Allied's Amended Complaint fails to state a due process claim. In its brief, Allied characterizes its claim as follows: "Allied . . . has not been offered a meaningful opportunity to participate in the administrative processes which can ultimately lead to refusals of Allied's shrimp shipments." Opp. at 34. Because this abstract allegation does not contain the elements of a due process claim, it fails as a matter of law.

Allied appears to concede that it has no constitutionally protected, substantive due-process rights to import goods into the United States. Opp. 35-36. Indeed, the only import-related case Allied cites in this section supports this proposition. *See NEC Corp. v. United States*, 151 F.3d 1361, 1369-79 (Fed. Cir. 1998). Thus, it is undisputed that an importer has no due process right

23

to challenge Congressional restrictions on imports.  *See id.* at 1370.

Nevertheless, Allied argues that it has procedural due process rights that are implicated in FDA's post-detention hearing procedures.  Allied's Amended Complaint, however, fails to allege the elements of a due process claim.  As Allied's own brief points out, procedural due process requires the existence of a property right.  *See* Opp. at 35 (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-41 (1985); *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.").  Here, however, because Allied sells or consigns its property to another entity before entry is made with Customs, Allied no longer has a property interest in its products at the time they are detained.  Moreover, under the FDCA, the opportunity to participate in admissibility proceedings is offered solely to the owner or consignee of the product offered for import, and not to the foreign producer.  *See* 21 U.S.C. § 381(a); *see also* 21 C.F.R. § 1.94.  Congress has thus explicitly limited the procedural rights of foreign producers in the context of FDA import proceedings.  Allied fails to identify any other source that would give the former owner of property the right to participate in an admissibility hearing other than the unsupported assertion that "Allied plainly possesses such rights."  Opp. at 36.

There is a second element to establishing a procedural due process claim:  a plaintiff must also show that it was denied appropriate process.  *See, e.g., Zwygart v. Bd. of County Comm'rs*, 483 F.3d 1086, 1093 (10th Cir. 2007); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005).  Usually, that means that plaintiffs will allege a deprivation of procedural due process rights in the context of a specific adjudicated proceeding.  For example, in *NEC Corp.*, an importer

24

argued (unsuccessfully) that the Department of Commerce violated its procedural due process rights in allegedly biased proceedings that resulted in an anti-dumping fine against NEC Corp. 151 F.3d at 1367. Here, however, Allied is not challenging any specific import refusal decision. See Am. Compl. ¶¶ 93-100. Instead, Count Four contains general and abstract objections to the procedures FDA allegedly uses in its administrative review of detained Chinese aquaculture without any actual claim that Allied was deprived of property without due process.[10]

Because Allied has failed to alleged a legitimate property interest or an actual denial of process, it has failed to state a procedural due process claim.

## CONCLUSION

For the foregoing reasons, Allied's Amended Complaint should be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

Of Counsel:                                  Respectfully submitted,

JAMES C. STANSEL                             JEFFREY S. BUCHOLTZ
Acting General Counsel                       Acting Assistant Attorney General

GERALD F. MASOUDI                            C. FREDERICK BECKNER III
Associate General Counsel                    Deputy Assistant Attorney General
Food and Drug Division
                                             EUGENE M. THIROLF
ERIC M. BLUMBERG                             Director
Deputy Chief Counsel, Litigation
                                                        /s/
                                             _____
KAREN E. SCHIFTER                            ANDREW E. CLARK
Associate Chief Counsel, Litigation          Senior Trial Counsel
U.S. Dept. of Health & Human Services        Office of Consumer Litigation
Office of the General Counsel                U.S. Department of Justice
5600 Fishers Lane                            PO. Box 386
Rockville, MD  20857                         Washington, D.C.  20044
(301) 827-1152                               (202) 307-0067

_____

[10] It bears noting that, Allied's allegations are contradicted by the actual administrative proceedings in this case. After initial third-party laboratory reports showed contamination in some of the products produced by Allied, FDA considered additional evidence from the owner/consignee and ultimately admitted the products.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing Reply in Support of Defendants' Motion to Dismiss Amended Complaint to be served via the District Court's electronic filing (ECF) system upon:

Eric W. Bloom
WINSTON & STRAWN, LLP
1700 K Street, NW
Washington, D.C.  20006
*Counsel for Plaintiff Allied Pacific Food (Dalian) Co., Limited*

this 8th day of April, 2008.


_____/s/_____
Andrew E. Clark

# EXHIBIT 1



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**                    Public Health Service

APR **0 4** 2008

Food and Drug Administration
Rockville MD 20857

Mr. Mitchell Fuerst
Ms. Christine Humphrey
Fuerst, Humphrey, Ittleman, PL
1001 Brickell Bay Drive
Suite 2002
Miami, Florida 33131

Dear Mr. Fuerst and Ms. Humphrey:

On December 7, 2007, we sent you an interim response regarding your request on behalf of
Allied Pacific Food Company (Allied) for removal of the firm from Detention Without Physical
Examination under Import Alert 16-131, "Detention Without Physical Examination of
Aquacultured Catfish . . . Due to the Presence of New Animal Drugs and/or Unsafe Food
Additives."  In that letter, we requested certain information from you regarding Allied's
compliance efforts and explained FDA's views regarding third party audit inspections, including
FDA's determination that it should verify third party auditors' capabilities.  Since that time, you
have made informal inquiries about the status of this matter, but have not made any submissions
in response to FDA's request for further information.  This letter summarizes the current status in
processing your request and discusses next steps forward.

Information Requested in FDA's December 7 Letter

On November 13, 2007, you provided FDA with Allied's revised HACCP plans dated November
12, 2007, for breaded shrimp, breaded skewered shrimp, and pan-fried tempura shrimp.  The
package also included two November 12, 2007, letters from the U.S. Department of Commerce
(USDoC) Seafood Inspection Program, attesting to the completion of audit inspections conducted
at Allied on November 3 and 8, 2007.  On November 15, 2007, you provided the qualifications
for Robert Helgerson and Mark Neely, auditors representing Cook and Thurber and Surefish,
respectively.  On November 21, USDoC provided its inspection reports to FDA.  FDA reviewed
this additional documentation and provided comments in a letter to you dated December 7, 2007.

2

The December 7 letter requested certain information about the revised HACCP plans:

> The verification step in the HACCP plans for imported shrimp requires
> evaluation of third-party laboratory testing results on a monthly basis. The
> HACCP plans do not . . . provide information describing how the firm evaluates
> the third-party laboratory testing results or what methodology is used. For
> domestic shrimp, the verification step in the HACCP plans requires a weekly
> review of monitoring records, corrective actions, and in-house laboratory results
> for the domestic shrimp. It is unclear what is meant by the "in-house" laboratory
> and what methodology is used by the "in-house" laboratory. FDA cannot fully
> review the verification steps for imported and domestic shrimp without this
> information.

The December 7 letter also requested information about the various HACCP audits of Allied. It
asked for documentation of any training or experience in seafood HACCP received by Mr.
Helgerson. Regarding the USDoC Seafood Inspection Program audits, it noted that "no detailed
information was provided regarding the adequacy of controls in place for unapproved veterinary
drugs used in aquacultured shrimp," and requested that USDoC provide this information if
available. Finally, the letter asked for clarification which HACCP plan was evaluated in
USDoC's November 8 audit.

FDA has not yet received any of the requested information described above. Allied needs to
provide complete information relevant to an audit inspection of Allied, and the auditor who
conducted it, before FDA conducts an on-site verification audit at the Allied facility of the third
party auditor's performance. If Allied decides not to proceed with a particular auditor, some of
the information specific to that auditor may not be needed. For example, if Allied decides not to
proceed further with Cook and Thurber, it would not need to submit the information requested
regarding Mr. Helgerson. No matter which auditor you select, however, you need to respond to
FDA's request for more information regarding Allied's HACCP plans.

Audit Inspection

FDA has received inspection reports from audit inspections of Allied conducted by USDoC,
Cook and Thurber, and Surefish. The December 7 letter explained that, in the context of Import
Alert 16-131, FDA believes it should verify whether the third party auditors are applying
standards consistent with the Agency's standards on the suitability of controls in place at a
processing facility to ensure that residues of drugs/food additives are appropriately controlled.

FDA, therefore, plans to conduct its own on-site verification audits of an auditor's work until it gains confidence that the specific auditor is properly applying HACCP principles. FDA has not yet conducted any such on-site audits of USDoC, Cook and Thurber, or Surefish.

The December 7 letter further explained that FDA was planning its next trip to China to perform a series of on-site verification audits of third party inspectors. It stated that if Allied is able to address the HACCP-related issues raised in the December 7 letter, and provided that there were no other significant adverse developments related to Allied's request from removal from the import alert in the meantime, FDA intended to make every effort to include Allied in that next trip. This remains FDA's intention. However, as explained above, Allied has not yet addressed the HACCP-related issues raised in the December 7 letter.

Based on your submissions and additional informal communications over the last few months, we see several options regarding an on-site verification audit. First, Allied could request that FDA conduct an on-site audit of one of the third parties that has already conducted an audit inspection of Allied, such as USDoC. In planning its next trip to China for on-site audits of third party inspectors, FDA is currently working with USDoC to include one or more on-site audits of USDoC. While it is too early to determine whether USDoC audits will occur on FDA's next trip to China, if and when they do occur FDA would be willing to include Allied as one of the on-site audits of USDoC. FDA has asked USDoC to recommend a list of firms it would like for FDA's on-site audits. Of course, before FDA conducts an on-site audit of USDoC involving Allied, Allied would need to address the HACCP-related issues raised in the December 7 letter, including those specific to the USDoC inspection.

Second, Allied could request that FDA conduct an on-site verification audit of the General Administration of Quality Supervision, Inspection and Quarantine of the People's Republic of China (AQSIQ) at the Allied facility.

FDA has explained to AQSIQ that AQSIQ can recommend to FDA any firms it would like for FDA's on-site audits and that, therefore, there is no need for FDA to acquiesce to having Allied on AQSIQ's list. From those firms recommended by AQSIQ for on-site audits, FDA will select several firms that AQSIQ has certified as being in compliance and for which the

information available to FDA to date is consistent with the firm having appropriate controls and processes in place for removal from the import alert.

Third, Allied could have an audit inspection conducted by AQSIQ after FDA has verified AQSIQ, provided FDA does in fact verify AQSIQ on its next planned trip. If FDA has verified AQSIQ as a third party inspector and AQSIQ subsequently audits Allied and certifies that Allied has appropriate controls and processes in place, FDA would not need to conduct an on-site audit of AQSIQ to have confidence in this certification.

To facilitate FDA's processing of your request for removal from the import alert, you need to respond to this letter in writing to clarify your choice so that FDA can proceed in planning its on-site audits.

the second option above -- that AQSIQ inspect Allied and then have FDA conduct an on-site verification audit of AQSIQ. If that is your selection, Allied would need to work with AQSIQ to have it inspect Allied, to have AQSIQ provide its inspection report to FDA, and to have AQSIQ recommend Allied to FDA as one of the firms for an on-site audit. If you would prefer to select a different option, please let us know in your written response to this letter. Your letter should also address FDA's request for more information raised in the December 7 letter and discussed above. FDA continues to work on planning its next audit inspection trip, so please respond promptly.

If you have any questions concerning this letter, please contact Mr. Ted Poplawski at 301-594-3849 or ted.poplawski@fda.hhs.gov.

Sincerely,

Domenic J. Veneziano, CDR USPHS
Director, Division of Import Operations & Policy

DJV:tp