## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALLIED PACIFIC FOOD (DALIAN),           Civil Action No.: 07-1982 (HHK)
COMPANY LIMITED,
a foreign Limited Company,

        Plaintiff,

vs.

U. S. FOOD AND DRUG
ADMINISTRATION, ANDREW C. VON
ESCHENBACH, M.D., Commissioner,
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES, and
MICHAEL O. LEAVITT, Secretary,

        Defendants.

_____/

## PLAINTIFF'S SURREPLY IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS THE PLAINTIFF'S AMENDED COMPLAINT

COMES NOW the Plaintiff, ALLIED PACIFIC FOOD (DALIAN) COMPANY, LIMITED ("Allied"), by and through its undersigned counsel, and files this surreply in opposition to the Defendants' motion to dismiss the Plaintiff's Amended Complaint. In support of this surreply, Allied respectfully states as follows:

### Exhibit 1 of the Reply in Support of the Defendants' Motion to Dismiss Allied's Amended Complaint is a *Post Hac* Rationalization of Agency Conduct Created During the Course of Litigation and Should be Viewed Critically by this Court.

On March 31, 2008 – three days before the Defendants' reply was due to be filed – Counsel for the Defendants (Andrew Clark, Esq.) telephoned undersigned counsel (Andrew Ittleman, Esq.) seeking the Plaintiff's agreement on a motion for an extension of time that the Defendants wished to file. Undersigned counsel advised Mr. Clark that the Plaintiff had no objection to the Defendants' motion. Accordingly, later that day, the

Defendants filed their unopposed motion for an extension of time to file their reply [DE 14]. On the morning of April 1, 2008, this Court entered an order ruling that the Defendants' reply was due on or before April 8, 2008.

The Defendants filed their reply in support of their motion to dismiss the Plaintiff's Amended Complaint [DE 15] on the evening of April 8, 2008. When the Defendants' reply was filed, counsel for the Plaintiff received the Defendants' reply via the Court's Electronic Case Filing System ("ECF").

Attached to the Defendants' reply as Exhibit 1 was a letter addressed to counsel for the Plaintiff that was purportedly dated April 4, 2008, *i.e.* one day after the original due date of the Defendants' reply. (Exhibit 1 of the Defendants reply is attached hereto as Exhibit 1.) According to the Defendants, the April 4, 2008 letter stands for the proposition that Allied's application for exemption under the Import Alert is still being considered by FDA and that Allied's claims are therefore premature. Defendants' Reply, at 7, 8-9.

As revealed in the attached certifications[1] of the identified recipients of FDA's April 4, 2008 letter (Mitchell S. Fuerst, Esq. and Christine Humphrey, Esq.), the first time that either Mr. Fuerst or Ms. Humphrey learned that an April 4, 2008 letter existed was on April 8, 2008 when undersigned counsel received the Defendants' reply with the letter attached as Exhibit 1 via the Court's ECF system. Despite the availability of electronic mail- and facsimile-transmitted correspondence, the Defendants made no effort independent of the filing of their reply to present the April 4, 2008 letter to either Allied

---

[1]    Mr. Fuerst's certification is attached hereto as Exhibit 2 and Ms. Humphrey's certification is attached hereto as Exhibit 3.

2

or its attorneys. Additionally, at the time that Allied's lawyers received the April 4, 2008 letter via the Court's ECF system, portions of the letter were redacted.

As is also revealed in the attached certifications of Mr. Fuerst and Ms. Humphrey, FDA's original, non-redacted April 4, 2008 letter did not arrive at Mr. Fuerst's and Ms. Humphrey's office until April 14, 2008, *i.e.* ten days after it was purportedly signed. The letter arrived at Mr. Fuerst's and Ms. Humphrey's office via United States Mail.

FDA's April 4, 2008 letter, as well as the Defendants' reliance upon it as evidence that the Plaintiff's claims are somehow premature, should be viewed critically by the Court when ruling on the Defendants' motion to dismiss. In short, the letter is a "*post hac* rationalization*" of the FDA's conduct prepared during the course of litigation which the Supreme Court of the United States has held "must be viewed critically." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1973); *see also First Union v. Heimann*, 600 F.2d 91, 96 (7th Cir. 1979); *Hussey Copper v. United States*, 852 F.Supp. 1116, 1120 (Ct. Int'l Trade 1994).

First, FDA's April 4, 2008 letter was not – as the Defendants offer in their reply – "issued" to the Plaintiff on April 4, 2008. As previously stated, counsel for Allied received a redacted version of the letter via ECF when the Defendants' filed their reply brief on April 8, 2008. Counsel for Allied did not receive the original transmission of the letter until April 14, 2008 via United States Mail.

Furthermore, the April 4, 2008 letter is not descriptive of the relationship that existed between the parties as of April 4, 2008. In the Defendants' reply, Defendants specifically relied upon the April 4, 2008 letter as evidence that Allied's claims are

3

premature: "That letter reminded Allied that FDA was still awaiting the information from Allied regarding Allied's HACCP program that FDA had requested in its December 2007 letter." *Id.* The Defendants' argument – like their very creation of the April 4, 2008 letter – is nothing more than a transparent effort to bootstrap a meritless legal argument and backfill the record to create an appearance of ongoing negotiations between Allied and FDA.

Allied respectfully reminds the Court that on two occasions subsequent to FDA's June 27, 2007 enactment of the Import Alert at issue in this case, Allied applied to FDA for exempt status under the Import Alert. Allied tailored its two applications so as to follow the directives contained in the Import Alert, and both applications were considered by Mr. Domenic Veneziano, Deputy Director of FDA's Division of Import Operations and Policy (DIOP).

Following Allied's formal applications, Mr. Veneziano, on behalf of FDA, via letters dated October 31, 2007 and December 7, 2007 (attached hereto as Exhibits 4 and 5, respectively), rejected Allied's applications. In the December 7, 2007 letter, Mr. Veneziano advised Allied that no Chinese firms may be exempted from detention without physical examination unless and until FDA conducts its own on-site inspection of such firm's Chinese facilities. However, Mr. Veneziano also acknowledged that such a visit to China was largely hypothetical, because "there are factors outside of FDA's control that may limit our ability to do so." Exhibit 5, at 4. As such, FDA's rejection of Allied's application for exemption under the Import Alert constituted final agency action.

Mr. Veneziano's April 4, 2008 letter is no different than his December 7, 2007 letter. In short, like the December 7, 2007 letter, the April 4, 2008 letter directs Allied to

4

FUERST, HUMPHREY, ITTLEMAN, PL
1001 BRICKELL BAY DRIVE, STE. 2002, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

furnish FDA with information not required by the terms of the Import Alert itself, and it advises Allied that its ability to become exempt under the Import Alert hinges on FDA's willingness and ability to take a hypothetical trip to China where it (FDA) may inspect Allied's Chinese facilities according to an undisclosed and undefined collection of standards and rules. The April 4, 2008 letter, which sends Allied into the same interminable purgatory that the December 7, 2007 letter did, serves only to reinforce the conclusion that FDA has taken final agency action in this case and that this action is therefore ripe.

In conclusion, FDA's April 4, 2008 letter to the Plaintiff, which was attached as Exhibit 1 to the Defendants' reply brief, should be viewed critically by this Court in ruling on the Defendants' motion to dismiss. The Defendants' creation of an eleventh-hour document transparently designed for purposes of litigation cannot undo the final agency action taken by the FDA. This case is ripe and the motion to dismiss filed by the Defendants should be denied.

FUERST, HUMPHREY, ITTLEMAN, PL
1001 BRICKELL BAY DRIVE, STE. 2002, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

WHEREFORE, for the foregoing reasons, the Plaintiff, ALLIED PACIFIC FOOD (DALIAN) COMPANY, LIMITED, by and through its undersigned counsel, respectfully requests that this Court deny the Defendants' Motion to Dismiss.

Dated this 24th day of April, 2008.

Respectfully submitted,

*Andrew S. Ittleman, Esq.*
Andrew S. Ittleman, Esq. .
Florida Bar No. 802441
Mitchell S. Fuerst, Esq.
Florida Bar No. 264598
Attorney of Record for
Allied Pacific Food (Dalian) Co., Ltd.
Fuerst Humphrey Ittleman, PL
1001 Brickell Bay Drive,
Suite 2002
Miami, FL 33131
305-350-5690 (o)
305-371-8989 (f)
aittleman@fuerstlaw.com

*Eric Bloom, Esq.*
Eric Bloom, Esq.
DC Bar No. 417819
Winston & Strawn
1700 K. Street, N.W.
Washington, D.C. 20006-3817
T: (202) 282-5000
F: (202) 282-5100
ebloom@winston.com

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing agreed motion (and attached proposed order) to be served via the District Court's electronic filing system upon:

Andrew E. Clark
Senior Trial Counsel
Office of Consumer Litigation
U.S. Department of Justice
PO Box 386
Washington, DC 20044
andrew.clark@usdoj.gov

this 24th day of April, 2008.

*Andrew S. Ittleman, Esq.*

7

**PLAINTIFF'S SURREPLY IN OPPOSITION TO THE DEFENDANTS' MOTION
TO DISMISS THE PLAINTIFF'S AMENDED COMPLAINT**

# EXHIBIT 1

DEPARTMENT OF HEALTH AND HUMAN SERVICES          Public Health Service

Food and Drug Administration
Rockville MD 20857

APR 0 4 2008


Mr. Mitchell Fuerst
Ms. Christine Humphrey
Fuerst, Humphrey, Ittleman, PL
1001 Brickell Bay Drive
Suite 2002
Miami, Florida 33131


Dear Mr. Fuerst and Ms. Humphrey:


On December 7, 2007, we sent you an interim response regarding your request on behalf of
Allied Pacific Food Company (Allied) for removal of the firm from Detention Without Physical
Examination under Import Alert 16-131, "Detention Without Physical Examination of
Aquacultured Catfish . ... Due to the Presence of New Animal Drugs and/or Unsafe Food
Additives." In that letter, we requested certain information from you regarding Allied's
compliance efforts and explained FDA's views regarding third party audit inspections, including
FDA's determination that it should verify third party auditors' capabilities. Since that time, you
have made informal inquiries about the status of this matter, but have not made any submissions
in response to FDA's request for further information. This letter summarizes the current status in
processing your request and discusses next steps forward.


<u>Information Requested in FDA's December 7 Letter</u>


On November 13, 2007, you provided FDA with Allied's revised HACCP plans dated November
12, 2007, for breaded shrimp, breaded skewered shrimp, and pan-fried tempura shrimp. The
package also included two November 12, 2007, letters from the U.S. Department of Commerce
(USDoC) Seafood Inspection Program, attesting to the completion of audit inspections conducted
at Allied on November 3 and 8, 2007. On November 15, 2007, you provided the qualifications
for Robert Helgerson and Mark Neely, auditors representing Cook and Thurber and Surefish,
respectively. On November 21, USDoC provided its inspection reports to FDA. FDA reviewed
this additional documentation and provided comments in a letter to you dated December 7, 2007.

Case 1:07-cv-01982-HHK    Document 15-2    Filed 04/08/2008    Page 3 of 5
Case 1:07-cv-01982-HHK    Document 21    Filed 04/24/2008    Page 10 of 27

2

The December 7 letter requested certain information about the revised HACCP plans:

> The verification step in the HACCP plans for imported shrimp requires
> evaluation of third-party laboratory testing results on a monthly basis. The
> HACCP plans do not . . . provide information describing how the firm evaluates
> the third-party laboratory testing results or what methodology is used. For
> domestic shrimp, the verification step in the HACCP plans requires a weekly
> review of monitoring records, corrective actions, and in-house laboratory results
> for the domestic shrimp. It is unclear what is meant by the "in-house" laboratory
> and what methodology is used by the "in-house" laboratory. FDA cannot fully
> review the verification steps for imported and domestic shrimp without this
> information.

The December 7 letter also requested information about the various HACCP audits of Allied. It
asked for documentation of any training or experience in seafood HACCP received by Mr.
Helgerson. Regarding the USDoC Seafood Inspection Program audits, it noted that "no detailed
information was provided regarding the adequacy of controls in place for unapproved veterinary
drugs used in aquacultured shrimp," and requested that USDoC provide this information if
available. Finally, the letter asked for clarification which HACCP plan was evaluated in
USDoC's November 8 audit.

FDA has not yet received any of the requested information described above. Allied needs to
provide complete information relevant to an audit inspection of Allied, and the auditor who
conducted it, before FDA conducts an on-site verification audit at the Allied facility of the third
party auditor's performance. If Allied decides not to proceed with a particular auditor, some of
the information specific to that auditor may not be needed. For example, if Allied decides not to
proceed further with Cook and Thurber, it would not need to submit the information requested
regarding Mr. Helgerson. No matter which auditor you select, however, you need to respond to
FDA's request for more information regarding Allied's HACCP plans.

Audit Inspection

FDA has received inspection reports from audit inspections of Allied conducted by USDoC,
Cook and Thurber, and Surefish. The December 7 letter explained that, in the context of Import
Alert 16-131, FDA believes it should verify whether the third party auditors are applying
standards consistent with the Agency's standards on the suitability of controls in place at a
processing facility to ensure that residues of drugs/food additives are appropriately controlled.

Case 1:07-cv-01982-HHK    Document 15-2    Filed 04/08/2008    Page 4 of 5
Case 1:07-cv-01982-HHK    Document 21    Filed 04/24/2008    Page 11 of 27

3

FDA, therefore, plans to conduct its own on-site verification audits of an auditor's work until it gains confidence that the specific auditor is properly applying HACCP principles. FDA has not yet conducted any such on-site audits of USDoC, Cook and Thurber, or Surefish.

The December 7 letter further explained that FDA was planning its next trip to China to perform a series of on-site verification audits of third party inspectors. It stated that if Allied is able to address the HACCP-related issues raised in the December 7 letter, and provided that there were no other significant adverse developments related to Allied's request from removal from the import alert in the meantime, FDA intended to make every effort to include Allied in that next trip. This remains FDA's intention. However, as explained above, Allied has not yet addressed the HACCP-related issues raised in the December 7 letter.

Based on your submissions and additional informal communications over the last few months, we see several options regarding an on-site verification audit. First, Allied could request that FDA conduct an on-site audit of one of the third parties that has already conducted an audit inspection of Allied, such as USDoC. In planning its next trip to China for on-site audits of third party inspectors, FDA is currently working with USDoC to include one or more on-site audits of USDoC. While it is too early to determine whether USDoC audits will occur on FDA's next trip to China, if and when they do occur FDA would be willing to include Allied as one of the on-site audits of USDoC. FDA has asked USDoC to recommend a list of firms it would like for FDA's on-site audits. Of course, before FDA conducts an on-site audit of USDoC involving Allied, Allied would need to address the HACCP-related issues raised in the December 7 letter, including those specific to the USDoC inspection.

Second, Allied could request that FDA conduct an on-site verification audit of the General Administration of Quality Supervision, Inspection and Quarantine of the People's Republic of China (AQSIQ) at the Allied facility.

FDA has explained to AQSIQ that AQSIQ can recommend to FDA any firms it would like for FDA's on-site audits and that, therefore, there is no need for FDA to acquiesce to having Allied on AQSIQ's list. From those firms recommended by AQSIQ for on-site audits, FDA will select several firms that AQSIQ has certified as being in compliance and for which the

Case 1:07-cv-01982-HHK    Document 15-2    Filed 04/08/2008    Page 5 of 5
Case 1:07-cv-01982-HHK    Document 21-2    Filed 04/24/2008    Page 12 of 27

4

information available to FDA to date is consistent with the firm having appropriate controls and processes in place for removal from the import alert.

Third, Allied could have an audit inspection conducted by AQSIQ after FDA has verified AQSIQ, provided FDA does in fact verify AQSIQ on its next planned trip. If FDA has verified AQSIQ as a third party inspector and AQSIQ subsequently audits Allied and certifies that Allied has appropriate controls and processes in place, FDA would not need to conduct an on-site audit of AQSIQ to have confidence in this certification.

To facilitate FDA's processing of your request for removal from the import alert, you need to respond to this letter in writing to clarify your choice so that FDA can proceed in planning its on-site audits.

the second option above -- that AQSIQ inspect Allied and then have FDA conduct an on-site verification audit of AQSIQ. If that is your selection, Allied would need to work with AQSIQ to have it inspect Allied, to have AQSIQ provide its inspection report to FDA, and to have AQSIQ recommend Allied to FDA as one of the firms for an on-site audit. If you would prefer to select a different option, please let us know in your written response to this letter. Your letter should also address FDA's request for more information raised in the December 7 letter and discussed above. FDA continues to work on planning its next audit inspection trip, so please respond promptly.

If you have any questions concerning this letter, please contact Mr. Ted Poplawski at 301-594-3849 or ted.poplawski@fda.hhs.gov.

Sincerely,

Domenic J. Veneziano, CDR USPHS
Director, Division of Import Operations & Policy

DJV:tp

**PLAINTIFF'S SURREPLY IN OPPOSITION TO THE DEFENDANTS' MOTION
TO DISMISS THE PLAINTIFF'S AMENDED COMPLAINT**

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALLIED PACIFIC FOOD (DALIAN),
COMPANY LIMITED,
a foreign Limited Company,

        Plaintiff,

vs.

U. S. FOOD AND DRUG
ADMINISTRATION, ANDREW C. VON
ESCHENBACH, M.D., Commissioner,
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES, and
MICHAEL O. LEAVITT, Secretary,

        Defendants.

_____/

Civil Action No.: 07-1982(HHK)

## CERTIFICATION OF MITCHELL S. FUERST, ESQ. IN SUPPORT OF THE PLAINTIFF'S MOTION TO STRIKE EXHIBIT 1 OF THE DEFENDANTS' REPLY IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS THE PLAINTIFF'S AMENDED COMPLAINT

MITCHELL S. FUERST, ESQ. respectfully certifies as follows:

1.    I am an attorney at law admitted to practice in the State of Florida. My motion to appear *pro hac vice* in this case is presently pending before the Court.

2.    I am counsel to the plaintiff in this case, Allied Pacific Food (Dalian) Company Limited ("Allied"). If called as a witness to testify to the instant issue, I could testify to the following facts based on my personal knowledge.

3.    At page 8 of the Defendants' reply brief, the Defendants asserted that a letter was issued to me as counsel to Allied on April 4, 2008. That is simply not true.

1

4.      In fact, the first time that I knew that FDA had written an April 4, 2008 letter to me was on April 8, 2008, after the Defendants filed their reply brief via the Court's ECF system and the letter was attached as Exhibit 1.

5.      Of course, when I received the letter as an attachment to the Defendants' reply, certain portions of the letter had been redacted and were therefore incomprehensible.

6.      I did not receive the original version of the FDA's letter until April 14, 2008, when the letter arrived at my office via United States Mail. The original version of the letter bears the blue ink signature of Mr. Domenic Veneziano and bears a red "RECEIVED" stamp indicating that the letter was received at my office on April 14, 2008. The original version of the letter is available for inspection upon request.

7.      Accordingly, because the Defendants have offered the April 4, 2008 letter as being somehow reflective of the relationship between the parties on April 4, 2008, and because I did not actually receive the letter until after the Defendants' reply was filed, the letter should be stricken. The letter is simply not what it purports to be.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 15th Day of April, 2008, in Miami, Florida.

MITCHELL S. FUERST, ESQ.
Counsel for the Plaintiff

2

**PLAINTIFF'S SURREPLY IN OPPOSITION TO THE DEFENDANTS' MOTION
TO DISMISS THE PLAINTIFF'S AMENDED COMPLAINT**

# EXHIBIT 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALLIED PACIFIC FOOD (DALIAN),           Civil Action No.: 07-1982(HHK)
COMPANY LIMITED,
a foreign Limited Company,

        Plaintiff,

vs.

U. S. FOOD AND DRUG
ADMINISTRATION, ANDREW C. VON
ESCHENBACH, M.D., Commissioner,
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES, and
MICHAEL O. LEAVITT, Secretary,

        Defendants.

_____/

## CERTIFICATION OF CHRISTINE HUMPHREY, ESQ. IN SUPPORT OF THE PLAINTIFF'S MOTION TO STRIKE EXHIBIT 1 OF THE DEFENDANTS' REPLY IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS THE PLAINTIFF'S AMENDED COMPLAINT

CHRISTINE HUMPHREY, ESQ. respectfully certifies as follows:

1.    I am an attorney at law admitted to practice in the State of Florida.

2.    I am counsel to the plaintiff, Allied Pacific Food (Dalian) Company Limited ("Allied"), although I do not plan on entering my appearance in this case. If called as a witness to testify to the instant issue, I could testify to the following facts based on my personal knowledge.

3.    It has come to my attention that the Defendants in this case have asserted that a letter was issued to me as counsel to Allied on April 4, 2008. That is simply not true.

1

4.      The first time that I knew that FDA had written an April 4, 2008 letter to me was on April 8, 2008, after the Defendants filed their reply brief in this case via the Court's ECF system and the letter was attached as Exhibit 1. Andrew Ittleman, Esq., who is my law partner and counsel to the Plaintiff in this litigation, made the letter available to me.

5.      Of course, when Mr. Ittleman first gave me the letter, certain portions of the letter had been redacted and were therefore incomprehensible.

6.      I did not receive the original version of the FDA's letter until April 14, 2008, when the letter arrived at my office via United States Mail.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 15th Day of April, 2008, in Miami, Florida.

CHRISTINE HUMPHREY, ESQ.
Counsel to Allied Pacific Food (Dalian) Co.

2

**PLAINTIFF'S SURREPLY IN OPPOSITION TO THE DEFENDANTS' MOTION
TO DISMISS THE PLAINTIFF'S AMENDED COMPLAINT**

# EXHIBIT 4



DEPARTMENT OF HEALTH AND HUMAN SERVICES                    Public Health Service

OCT 3 1 2007

Food and Drug Administration
Rockville MD 20857

Ms. Christine Humphrey
Fuerst Humphrey Ittleman PL
1001 Brickell Bay Drive, Ste. 2002
Miami, FL 33131

Dear Ms. Humphrey:

This is in reply to your request dated September 10, 2007, concerning the removal shrimp
processed by Allied Pacific Foods Co., Ltd., Dalian, China, from detention without physical
examination (DWPE) under Import Alert# 16-131, ""Detention Without Physical Examination Of
Aquacultured Catfish, Basa (Pangasius Sp), Shrimp, Dace, And Eel Products From The People's Republic
Of China Due To The Presence Of New Animal Drugs And/Or Unsafe Food Additives."

A review of the information submitted with your request and Food and Drug Administration
(FDA) records indicates that shrimp processed by Allied Pacific Foods Co., Ltd., 888 Yong
Zheng Industrial Area, Dalain, China, has not met the criteria for removal from DWPE at this
time.

The private laboratory analysis submitted with your request for entry AQZ-2510860-6 indicated
that nitrofurans (specifically, 1-aminohydantoin hydrochloride (AH)) were present at 1.98 ppb
and 7.75 ppb, which are above the limit of detection (LOD). Further, the FDA district's review
of the private lab analysis for line entries AQZ-0251860-6/1/1 and AQZ-0251619-6/1/1 found
the samples to have levels of nitrofurans above the LOD.

The submission includes HACCP plans for breaded shrimp, breaded skewered shrimp, and pre-
fried tempura shrimp. Antibiotic residues are identified as a hazard and controlled at the
Receiving raw materials critical control point. Residues listed include nitrofurans (NF)
(furazolidone, furaltadone, furacilinum, nitrofurantoin), fluroquinolones (FQ) (flumequine,
ciprofloxacin, enrofloxacin, dinofloxacin), malachite green, leuchomalachite green, gentian
violet (GV), and leuchogentian violet (LGV). The critical limit "No (residue) should be used" is
adequately set for all residues. All residue limits of detection (LOD) are adequate except for GV
and LGV which is set at 1.5 ppb above the FDA acceptable limit of detection of 1.0 ppb.

Imported raw materials are sampled for antibiotics. Residue-free certificates are required for
domestic raw materials according to the firm's HACCP plan. Tabs 1-16, sub-tab 'c' include a
"Raw Material Antibiotic Test Report" for domestic raw materials received by the firm. All
reports show "Not Detected" for all residues tested; however, GV and LGV are tested at a LOD
of 1.5 ppb. The firm verifies by sending two samples to a third-party lab every month. Third
party lab analyses for all residues have LODs equal to FDA except for GV and LGV. The levels
for GV and LGV are set at 1.5 ppb, which is inadequate.

RECE

NOV 0 3

Third-parties Cook & Thurber and Surefish Seafood Quality Specialists (Lynnwood, WA) conducted audits on June 22, 2007 and May 15 & 16, 2007, respectively, prior to the issuance of the import alert on June 28, 2007. Although these audits were conducted prior to the issuance of the import alert, the results were acceptable as they represent the firm's current HACCP system implementation. However, the package fails to include a adequate description of Cook & Thurber and Surefish Seafood Quality Specialists functions, knowledge, and experience; and the CV, qualifications and experience for both auditors, Mark D. Neely and Roger Helgerson.

The firm provided testing reports issued by the PROC Provincial Entry-Exit Inspection and Quarantine Bureau, Food Testing Center (CIQ), for five entries under Tab 2, A – E. The translated reports are incomplete as they do not specify the analytical methods used.

If you have any questions concerning this request, feel free to contact Ted Poplawski at (301) 443-6553.

Sincerely yours,

Domenic Veneziano
Director
Division of Import Operations
  & Policy

**PLAINTIFF'S SURREPLY IN OPPOSITION TO THE DEFENDANTS' MOTION
TO DISMISS THE PLAINTIFF'S AMENDED COMPLAINT**

# EXHIBIT 5

U.S.  FOOD  AND  DRUG  ADMINISTRATION
DIVISION  OF  IMPORT  OPERATIONS  &  POLICY

PHONE  NUMBER:  301-443-6553
FAX  NUMBER:  301-594-0413

## FACSIMILE TRANSMITTAL SHEET

TO: Mitchell Fuerst / Christina Humphrey        FROM: Ted Poplawski

COMPANY: FHI PL                                 DATE: 12/6/2007

FAX NUMBER: 305 371-8989                        TOTAL NO. OF PAGES INCLUDING COVER: 5

PHONE NUMBER: 305 350-5690                      SENDER'S PHONE NUMBER: 301 694-3849

RE: Allied Pacific Food Co. response

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

5600 FISHERS LANE, 12TH FLOOR, SUITE 36 – ROCKVILLE, MARYLAND 20857



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

Public Health Service

Food and Drug Administration
Rockville MD 20857

DEC 0 7 2007

Mr. Mitchell Fuerst
Ms. Christine Humphrey
Fuerst, Humphrey, Ittleman, PL
1001 Brickell Bay Drive
Suite 2002
Miami, Florida 33131

Dear Mr. Fuerst and Ms. Humphrey:

This is in response to documents provided to the Food and Drug Administration (FDA) in further support of your request on behalf of Allied Pacific Food Company for removal of the firm from Detention Without Physical Examination (DWPE) under Import Alert 16-131, "Detention Without Physical Examination of Aquacultured Catfish, Basa (Pangasius Sp), Shrimp, Dace, and Eel Products From The People's Republic Of China Due to the Presence of New Animal Drugs and/or Unsafe Food Additives." This letter addresses only the documentation provided regarding the firm's Hazard Analysis Critical Control Point (HACCP) system; it does not address any remaining issues related to private laboratory analytical documentation, which will be responded to separately.

On November 13, 2007, you provided FDA with the firm's revised HACCP plans dated November 12, 2007, for breaded shrimp, breaded skewered shrimp, and pan-fried tempura shrimp. The package also included two letters dated November 12, 2007, from the U.S. Department of Commerce (USDoC) Seafood Inspection Program, attesting to the completion of audit inspections conducted at the firm on November 3 and 8, 2007. On November 15, 2007, you provided the qualifications for Robert Helgerson and Mark Neely, auditors representing Cook and Thurber and Surefish, respectively. On November 21, USDoC provided their inspection reports to FDA. The audits covered an examination of the firm's HACCP plan, the operation of the plan, including the standard sanitation operating procedures, for compliance with FDA's Seafood HACCP regulation at 21 CFR part 123.

FDA has reviewed the additional documentation you provided and has the following comments:

Revised HACCP Plans

The three HACCP plans identify aquaculture drugs as a potential hazard at the receiving step. The processor receives raw material from two sources: imported aquacultured shrimp and domestically farm-raised shrimp. According to the three HACCP plans, each lot of imported shrimp is tested by a third-party laboratory using rapid screening kits, ELISA and CHARM II, and each lot of domestic farm-raised shrimp is accompanied by a certificate indicating proper drug usage.

The verification step in the HACCP plans for imported shrimp requires evaluation of third-party laboratory testing results on a monthly basis. The HACCP plans do not, however, provide information describing how the firm evaluates the third-party laboratory testing results or what methodology is used. For domestic shrimp, the verification step in the HACCP plans requires a weekly review of monitoring records, corrective actions, and in-house laboratory results for the domestic shrimp. It is unclear what is meant by the "in-house" laboratory and what methodology is used by the "in-house" laboratory. FDA cannot fully review the verification steps for imported and domestic shrimp without this information.

Because the imported shrimp is routinely tested only by rapid screening method, for the verification step for imported shrimp, FDA recommends including monthly or quarterly verification testing using methods recommended by FDA or AOAC.

## Auditor Paper Credentials

The documentation provided for Mr. Helgerson indicates experience in auditing and in HACCP generally; however, there is no information in the documentation provided to demonstrate that Mr. Helgerson has any training or experience in seafood HACCP. If Mr. Helgerson does have this training or experience, please provide documentation of this. FDA has no additional comments or questions regarding Mr. Neely's documentation.

## USDoC Seafood Inspection Program Audits

The November 3 and 8, 2007 audit reports from USDoC provided a broad evaluation of the firm's overall implementation of the firm's HACCP system. No detailed information was provided regarding the adequacy of controls in place for unapproved veterinary drugs used in aquacultured shrimp. If available, the USDoC should provide this information.

The November 3 audit evaluated the September 1, 2007, HACCP plan. In the November 8 audit, the auditor does not indicate what HACCP plan was evaluated, that is, whether it was the same or a revision of the September 1, 2007, HACCP plan audited on November 3. This should be clarified.

## Audit Inspection

As you are aware, IA 16-131 states that if a firm wishes to request removal from DWPE for Chinese aquaculture, the firm should provide information to FDA that demonstrates that the "manufacturer has the appropriate controls and processes in place to ensure the quality of the product" it produces. IA 16-131 further describes the information that may satisfy that standard to include documentation from "an appropriate third-party ... demonstrating that an inspection of the processor was conducted and that the seafood was processed in accordance with ... 21 CFR part 123...." As FDA has begun to process requests to be removed from DWPE under IA 16-131, FDA has given additional consideration to what it means for the third party auditor to be "appropriate" in this context.

As we discussed during our November 13 meeting, FDA has been contemplating whether to conduct on-site inspections of third party auditors in order to evaluate the adequacy of their submissions, i.e., whether the third party is an "appropriate" auditor. The Seafood HACCP regulation, 21 CFR part 123, is an innovative rule in the regulation of food safety, in that it places the burden on processors of fish and fishery products to identify hazards that are reasonably likely to occur and to develop suitable controls for those hazards. Making these HACCP assessments properly requires a solid scientific background, a thorough understanding of the particular food and how it is processed, and a working knowledge of HACCP principles. The transition to a HACCP control system has proven to be a significant challenge for much of the U.S. and foreign fish and fishery products industry as well as for many state, federal, and foreign regulatory officials. Indeed, FDA has found that industry representatives, investigators, and consultants who understand these concepts in theory do not always apply them properly in the processing plant environment. For this reason as well as other concerns, FDA plans to apply the same standards and processes to inspections conducted by USDoC, which conducts inspections under a fee-for-service structure, as it does to inspections conducted by other third parties.

The evidence summarized in the Import Alert suggests that a significant portion of the Chinese aquaculture processing industry had not properly implemented HACCP controls as required. For example, during the period October 1, 2006 through May 31, 2007, 25% of the aquacultured catfish, Basa (Pangasius sp), shrimp, dace, and eel from China that FDA tested contained drug/food additive residues. If appropriate and effective controls were in place, they would have prevented this routine, documented occurrence of unapproved new animal drugs or unsafe food additives in the finished products from China. Because many Chinese aquaculture processors may have sufficient HACCP plans on paper but may not appropriately implement them, as has been the case elsewhere, and because FDA does not have the resources to itself inspect every foreign producer on an ongoing basis, FDA believes that third party audits of the foreign processors will play an important role in FDA's assessment whether a manufacturer has the appropriate controls and processes in place.

However, given the learning curve experienced by regulators around the world in shifting to HACCP-based inspections, FDA's current view is that, before it can be confident in the quality of a given auditor, it should verify that the auditor understands the science, the product, the processing technology, and the principles of HACCP and can apply them in different processing plant settings. Thus, in addition to reviewing a processing plant's HACCP paperwork and a third-party's credentials, FDA believes it would be prudent, at this early stage of this program, to conduct its own on-site audits of the auditors' work until it gains confidence that the specific auditor or auditors are properly applying HACCP principles. This process would enable FDA to verify that the third party will apply standards consistent with the Agency's standards on the suitability of controls in place at a processing facility to ensure that residues of drugs/food additives will be appropriately controlled. FDA has followed this inspect-the-auditor process for the one firm that has been removed from DWPE under Import Alert 16-131 to date.

FDA does not believe it should forego inspections to verify the ability of auditors to conduct appropriate HACCP inspections simply because a company may have had several third party audits of its processes. Cumulative audits are only as reliable as the quality of the auditors who

perform them. Thus, multiple audits will not provide FDA with the assurance that HACCP principles are being properly applied unless and until FDA gains confidence with at least one of the specific auditors.

FDA is currently planning its next trip to China to perform a series of audits of several aquaculture firms and their third party inspectors. Although we seek to make that trip as soon a practicable (our current target is January or February 2008), there are factors outside of FDA's control that may limit our ability to do so. If Allied is able to address the HACCP-related issues raised in this letter above, and provided that there are no other significant adverse developments related to Allied's request in the meantime, FDA intends to make every effort to include Allied in that next trip.

If you have any questions concerning this letter, please contact Mr. Ted Poplawski at 301-594-3849 or ted.poplawski@fda.hhs.gov.

Sincerely,

Domenic J. Veneziano, CDR/USPHS
Director, Division of Import Operations & Policy

- 4 -